```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**UNITED STATES OF AMERICA,**

       **Plaintiff,**

**v.**           //    **CRIMINAL ACTION NO. 1:14CR89-05**
                                     **(Judge Keeley)**

**KEEVUS WEEKS, a/k/a SHAKE,**

       **Defendant.**

### MEMORANDUM OPINION AND ORDER DENYING
### DEFENDANT'S MOTION FOR A NEW TRIAL [DKT. NO. 813]

Pending before the Court is a motion for a new trial filed by the defendant, Keevus Weeks ("Weeks"). On June 14, 2016, following a two-day trial, a jury returned a verdict of guilty on four counts (Dkt. No. 794). On June 27, 2016, Weeks filed a motion seeking a new trial (Dkt. No. 813). For the following reasons, the Court **DENIES** Weeks's motion for a new trial (Dkt. No. 813).

### BACKGROUND

From the Spring of 2011 until November 4, 2014, Weeks, with others, conspired to distribute heroin and oxycodone, Schedule I and II controlled substances, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C) (Dkt. No. 5 at 1). On July 30, 2013, Weeks distributed oxycodone. Id. at 7. On two occasions, July 25, 2013, and August 6, 2013, he distributed oxycodone within 1000' of West Virginia University, a public university. Id. at 6, 8.

Weeks's jury trial began on June 13, 2016, and lasted two days. The evidence included testimony from numerous witnesses

called by the government, including co-conspirators, a confidential informant, expert witnesses, and law enforcement. After the jury convicted Weeks on all four counts, the Court advised him that he had 24 days to file any post-trial motions (Dkt. No. 799).

On June 27, 2016, Weeks filed a motion for a new trial (Dkt. No. 813). The government opposed Weeks's motion on July 8, 2016 (Dkt. No. 828). The motion is now fully briefed and ripe for disposition.

## LEGAL STANDARD

Pursuant to Federal Rule of Criminal Procedure 33, a court may vacate a criminal conviction and grant a new trial "if justice so requires." However, "a trial court should exercise its discretion to award a new trial sparingly, and a jury verdict is not to be overturned except in the rare circumstance when the evidence weighs heavily against it." United States v. Smith, 451 F.3d 209, 217 (4th Cir. 2006). Further, "any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." Fed. R. Crim. Pro. 52(a).

## ANALYSIS

Weeks premises his motion for a new trial on three grounds (Dkt. No. 813). First, he contends the Court erred by failing to

grant a mistrial when government witness Raheem Cuffee ("Cuffee") testified on cross-examination that Weeks had been incarcerated as a result of a probation violation. Id. at 1. Next, he argues the Court erred when it allowed the government to introduce the lab report and testimony of Rebecca Harrison regarding her analysis of the controlled substances at issue. Id. Finally, Weeks contends that the Court should have granted his motion for judgment of acquittal at the conclusion of the government's case-in-chief and again at the conclusion of his case-in-chief. Id. For the reasons that follow, the Court **DENIES** Weeks's motion. Id.

**I.  Raheem Cuffee's Testimony**

Trial courts have broad discretion to decide whether "manifest necessity" exists to declare a mistrial. United States v. Sloan, 36 F.3d 386, 393 (4th Cir. 1994) (citing Illinois v. Somerville, 410 U.S. 458, 462 (1973)). While there is no single test for a finding of manifest necessity, a high degree of necessity is required before a mistrial is appropriate. Id. at 394 (internal citations omitted). Here, the Court's actions, open-ended questions by defense counsel, and jury instructions all support the conclusion that Cuffee's statement did not prejudice Weeks and did not create any manifest necessity for a mistrial.

**MEMORANDUM OPINION AND ORDER DENYING**
**DEFENDANT'S MOTION FOR A NEW TRIAL [DKT. NO. 813]**

Notably, the Court and the government took precautions to address this issue before trial. The government's witness list included individuals with knowledge about Weeks's incarceration for a probation violation during the time relevant to the charges (Dkt. No. 767). Government counsel expressly requested that defense counsel craft leading questions in order to avoid eliciting testimony pertaining to this knowledge. Moreover, at the final pre-trial conference, the Court underscored for defense counsel the importance of asking leading questions to avoid testimony concerning unrelated offenses.

Nevertheless, during trial, on cross-examination, Cuffee testified that Weeks had been picked up on a probation violation. Defense counsel's open-ended questions about the time frames relating to when Weeks was in West Virginia prompted, if not invited, Cuffee to consider Weeks's incarceration as a reference point. Although the Court suggested a stipulation as to when Weeks was in West Virginia, defense counsel declined the remedy so as not to draw attention to the comment. Neither the government nor any witness commented on this information later in the trial.

Finally, the Court's final jury instructions stated:

> Even if you find that the defendant may have committed similar acts in the past, this is not evidence that he

>  committed such an act in this case. You may not convict
>  a person simply because you believe he may have committed
>  similar acts in the past.  The defendant is on trial only
>  for the crimes charged, and you may consider the evidence
>  of prior acts only on the issue of knowledge or intent.

(Dkt. No. 790).

That Cuffee did not offer his comment during the government's direct examination, that neither the government nor other witnesses highlighted the comment, that the defense was on notice about the danger of eliciting the information by asking open-ended questions, and that the Court gave curative jury instructions all support the conclusion that this statement did not result in a miscarriage of justice.  Therefore, no manifest necessity existed to declare a mistrial based on Cuffee's comment (Dkt. No. 782).

**II.  Forensic Lab Reports and Chemist Testimony**

At trial, the government presented forensic laboratory reports and testimony from the chemist who prepared the reports, Rebecca Harrison ("Harrison"), as evidence to identify the substances that Weeks distributed.  Weeks has not asserted that the substances lacked authenticity or were not the substance alleged.  Nor did he request an independent forensic analysis.

Harrison testified about her professional background, her methods of analyzing the substances (micrometrics, marquee, and gas

5

chromotography/mass spectrometry), the authenticity and chain of custody of the drugs, and her preparation of the reports. Although she was categorized as an expert witness, this fact is of no consequence because the identity of a controlled substance can be determined through lay testimony and circumstantial evidence. United States v. Dolan, 544 F.3d 1219, 1221 (4th Cir. 1976). See also United States v. Howard-Arias, 679 F.2d 363, 366 (4th Cir. 1982) ("[T]he ultimate question [on a chain of custody issue] is whether the authentication testimony was sufficiently complete so as to convince the court that it is improbable that the original item had been exchanged with another or otherwise tampered with.")

Weeks has provided no compelling reason as why the Court erred by admitting this evidence, much less why this is a "rare circumstance" where it should have used its discretion to redo the entire trial. Smith, 451 F.3d at 217. Accordingly, the Court was well within its discretion to admit this evidence at trial.

**III. Motion for Judgment of Acquittal**

Pursuant to Federal Rule of Criminal Procedure 29, in a ruling on a motion for judgment of acquittal, courts must consider whether the government's evidence is insufficient "to establish factual guilt on the charges of the indictment." Fed. R. Crim. P. 29;

United States v. Alvarez, 351 F.3d 126, 129 (4th Cir. 2003) (internal citations omitted). The relevant inquiry is whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt based on the evidence produced at trial, viewed in the light most favorable to the Government. United States v. Wilkins, 58 F. App'x. 959, 961 (4th Cir. 2003) (per curiam). Here, the government presented sufficient evidence as to all charges.

In Count One, the government charged Weeks with conspiracy to distribute oxycodone and heroin. A conspiracy is an agreement between two or more persons to join together to accomplish some unlawful purpose. United States v. Burgos, 94 F.3d 849, 857 (4th Cir. 1996) (en banc). A defendant must enter into a conspiracy knowingly and voluntarily. Id.

At trial, the government presented multiple witnesses who admitted to 1) driving Weeks and others from Philadelphia, Pennsylvania, to Morgantown, West Virginia, to sell drugs and 2) housing and accommodating Weeks and others in multiple locations in Morgantown while they sold drugs. Other witnesses self identified as middlemen for Weeks and others conspirators. Often Weeks and others would share the same phone for drug business purposes. The government also presented testimony from an individual from

Philadelphia recruited and trained by Weeks to sell drugs in Morgantown. Whether as participants in the conspiracy or as observers of it, these witnesses provided ample evidence to sustain the verdict as to Count One.

Count Six charged Weeks with distribution of oxycodone. In addition to the discussed evidence already discussed, the government presented the testimony of a confidential informant who, after being introduced to Weeks by a co-conspirator, developed a drug relationship with Weeks. On four to five occasions during the drug relationship, the informant would drive from Buckhannon to Morgantown to obtain oxycodone from Weeks that he would later distribute in Buckhannon.

Counts Five and Seven charged Weeks with distribution of oxycodone within 1,000 feet of a protected location. The government presented video recordings depicting Weeks and the informant in a truck. The informant testified about details of these undercover transactions, which verified the voluntary nature of Week's actions. To prove the location of these transactions, an engineer for the City of Morgantown prepared a map to establish the close proximity of the truck to a building owned by West Virginia University ("WVU"), a public university. That building was visible

through the truck's window in the recording. The engineer testified about the locations depicted on the map, and a WVU police officer testified that the building belonged to WVU. When viewed in the light of most favorable to the government, the witness testimony, videos, and map, reasonably establish Weeks's factual guilt.

When the evidence is viewed in the light most favorable to the government, a rational trier of fact could have found Weeks guilty beyond a reasonable doubt on all counts. The evidence therefore was sufficient to properly deny the motions for judgment of acquittal (Dkt. No. 785 and 788).

## CONCLUSION

For the reasons discussed, the Court **DENIES** Weeks's motion for a new trial (Dkt. No. 813).

It is so **ORDERED**.

The Court **DIRECTS** the Clerk to transmit copies of this Order to counsel of record.

DATED: August 2, 2016.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE
